61 F.3d 1054
 HBE LEASING CORPORATION, Signal Capital Corporation, and
John Hancock Leasing Corporation,
Plaintiffs-Appellees Cross-Appellants,
v.
Susan Murphy FRANK, Carl P. Goldstein, Richard A. Stoloff,
Goldstein & Stoloff, a partnership, and Wallace
Berkowitz, as trustee,
Defendants-Appellants Cross-Appellees,
Clemence Frank, Defendant-Cross-Appellee,
Hiram J. Frank and Kevin Gleason, Defendants.
 Nos. 873, 1467, 1468, Dockets 94-7607, 94-7635 and 94-7657.
 United States Court of Appeals,
Second Circuit.
 Argued March 29, 1995.
Decided Aug. 7, 1995.
 
 S. Pitkin Marshall, New York City, for plaintiffs-appellees-cross-appellants.
 Judd Burstein, New York City (Marc Fernich, Gregory Fleesler, New York City, of counsel and on the brief), for defendants-appellants Susan Murphy Frank and Wallace Berkowitz, as trustee.
 Carl P. Goldstein, Monticello, NY (Richard A. Stoloff, Goldstein & Stoloff, Monticello, NY, of counsel), for defendants-appellants-cross-appellees Carl P. Goldstein, Richard A. Stoloff and Goldstein & Stoloff, a partnership.
 Edward Rubin, New York City (Stewart A. Marin, New York City, of counsel), for defendant-cross-appellee.
 Before MINER and PARKER, Circuit Judges, and SCHEINDLIN, District Judge.*
 PARKER, Circuit Judge:
 
 
 1
 Facing a $21 million judgment, Hiram J. Frank ("Frank") conveyed the bulk of his considerable property to his lawyers, his fiancee, and his mother. Whether New York fraudulent conveyance law permits the judgment creditor to set aside these conveyances is the issue raised in these appeals from a final judgment of the United States District Court for the Southern District of New York (Brieant, Judge ).
 
 
 2
 In the course of defending a multi-million dollar civil RICO and common law fraud action brought against Frank and certain related people and entities,[1] Frank conveyed away virtually all of the defendants' assets. Three of the five successful plaintiffs in the RICO action (collectively denominated "HBE"), now judgment creditors facing a recalcitrant Frank and having recovered only a tiny portion of the judgment, challenged these conveyances as fraudulent under the New York Uniform Fraudulent Conveyance Act, N.Y.Debt. & Cred.Law ("DCL") Secs. 270-281 (McKinney 1990), in three separate proceedings. First, HBE challenged one set of conveyances in proceedings supplementary to the RICO judgment. In that case, Judge Gerard L. Goettel, who had presided over the RICO trial, set aside certain transfers and upheld others, as explained below. HBE Leasing Corp. v. Frank, 837 F.Supp. 57 (S.D.N.Y.1993) ("HBE I "). On appeal, this Court affirmed in part and reversed in part. HBE Leasing Corp. v. Frank, 48 F.3d 623 (2d Cir.1995) ("HBE IV "). Second, in this independent action, HBE challenged another set of conveyances, to Frank's fiancee, mother, and lawyers. These conveyances are the subject of Judge Charles L. Brieant's summary judgment rulings in the decision now on appeal. HBE Leasing Corp. v. Frank, 851 F.Supp. 571 (S.D.N.Y.1994), modified, No. 93 Civ. 1597 (S.D.N.Y. May 24, 1994) ("HBE III "). Third, HBE challenged the transfer of a note in a separate action brought in the Southern District of Florida.
 
 
 3
 Frank's disposition of his assets during the RICO litigation may be summarized as follows:
 
 
 4
 1. Frank encumbered real estate owned by H.H. Frank Enterprises, Inc. ("Enterprises"), one of the RICO defendants controlled by Frank, by conveying two mortgages valued at $350,000 to his mother, Clemence Frank, who was not a defendant in the RICO action. In HBE I, Judge Goettel voided these transfers. This Court in HBE IV affirmed the avoidance of one of the mortgages and reversed and remanded as to the second mortgage. 48 F.3d at 629.
 
 
 5
 2. During the RICO litigation, Frank paid numerous defense attorneys from Enterprises's coffers. $775,000 of these payments were challenged as fraudulent in HBE I. Although Judge Goettel declined to set aside these payments, that ruling was reversed and remanded in HBE IV. Id.
 
 
 6
 3. Frank cashed over $200,000 in bonds from which he purchased an exempt Florida residence. This transfer of assets has not been challenged.
 
 
 7
 4. Frank made several transfers in October 1990 to his then-fiancee, Susan Murphy Frank ("Murphy"): a $383,000 Liberty, New York, residence, $864,000 in bonds (to be held in trust by Wallace Berkowitz), a $56,000 yacht, and an $11,000 engagement ring.[2] In the present action, HBE moved for summary judgment to void these transfers as fraudulent. Judge Brieant granted the motion, voiding all the transfers to Murphy and awarding judgment to HBE in the amount of the assets' combined value. Murphy and Berkowitz appeal.
 
 
 8
 5. In July 1991 Frank transferred $1,010,200 in bonds to attorneys Carl P. Goldstein and Richard A. Stoloff and their firm, Goldstein & Stoloff, Esqs. (hereafter collectively "Goldstein"). That transfer has not been challenged.
 
 
 9
 6. On November 5, 1992 (immediately after the jury verdict in the RICO case), Frank transferred to Goldstein a $227,000 bond (North Broward Bond), a $144,000 mortgage (Chern Mortgage) and a $278,000 note (Fox Run Note).[3] HBE moved for summary judgment to void the three conveyances as fraudulent. In HBE III, Judge Brieant granted the motion in part, voiding the transfer of the North Broward Bond and entering judgment against Goldstein for the value of the bond plus interest, for a total of $258,000. The district court's order does not address the Chern Mortgage and Fox Run Note; however, because the court entered final judgment, HBE's claims as to the mortgage and note were effectively dismissed. Goldstein appeals with respect to the bond; HBE cross-appeals with respect to the mortgage and note.
 
 
 10
 7. Frank transferred a note valued at $201,000 to his Florida attorneys in November 1992. That conveyance was challenged in the Southern District of Florida and voided by Judge Kenneth Ryskamp on June 16, 1994.
 
 
 11
 8. In August 1991 and October 1992, Frank transferred bonds worth $482,000 to Clemence Frank. In HBE III, Judge Brieant granted Clemence Frank's motion for summary judgment and dismissed HBE's claims against her. HBE cross-appeals as to that ruling.
 
 
 12
 For the reasons set forth below, we hold that (1) the transfers to Murphy are voidable and we therefore affirm that portion of the district court's judgment; (2) the transfers of the North Broward Bond and Fox Run Note are voidable and we therefore affirm as to the bond and reverse and remand as to the note; (3) there exist genuine issues of material fact as to the transfer of the Chern Mortgage and we therefore reverse and remand on that issue; and (4) there exist genuine issues of material fact as to the transfer of the bonds to Clemence Frank and we therefore reverse that portion of the court's judgment and remand for further proceedings.
 
 THE STATUTES
 
 13
 This diversity case arises under the New York Uniform Fraudulent Conveyance Act. Several provisions of that act are at issue. First, DCL Sec. 276 forbids a transfer made with actual intent to defraud creditors:
 
 
 14
 Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.
 
 
 15
 The district court voided the North Broward Bond and the Murphy transfers not under DCL Sec. 276, however, but under DCL Sec. 273-a, which permits a creditor to attack certain transfers regardless of the transferor's state of mind:
 
 
 16
 Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.
 
 
 17
 DCL Sec. 273-a "fleshed out the [common law] meaning of a fraudulent conveyance by stigmatizing certain conveyances made during litigation." Orr v. Kinderhill Corp., 991 F.2d 31, 35 (2d Cir.1993).
 
 
 18
 No one disputes that Frank was a defendant in an action for money damages who did not satisfy the judgment and who made certain conveyances while the action was in progress. The dispute is whether the conveyances were made with, or without, "fair consideration." The term "fair consideration" is defined in DCL Sec. 272:
 
 
 19
 Fair consideration is given for property, or obligation,
 
 
 20
 a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
 
 
 21
 b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.
 
 
 22
 The meaning of DCL Sec. 272 is primarily at issue in these appeals.
 
 
 23
 Finally, DCL Secs. 278 and 279 set out remedies for creditors challenging fraudulent conveyances. Section 279 pertains to creditors whose claims have not matured. Section 278 pertains to creditors, like HBE, whose claims have matured, and provides:
 
 
 24
 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser
 
 
 25
 a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
 
 
 26
 b. Disregard the conveyance and attach or levy execution upon the property conveyed.
 
 
 27
 2. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may retain the property or obligation as security for repayment.
 
 
 28
 With that framework in mind, we turn to the issues raised on appeal.
 
 THE CONVEYANCES TO MURPHY
 
 29
 Frank conveyed the bond and residence to Murphy pursuant to a prenuptial agreement dated October 18, 1990, more than two years after the RICO suit was filed and some two years prior to judgment. Frank and Murphy were married a few days later. The district court noted that although prenuptial agreements are usually effective under New York law "as between the parties to them, ... such transfers do not in and of themselves meet the criteria of Sec. 272 of the Debtor & Creditor Law so as to be non-fraudulent and binding on third party creditors." HBE III, 851 F.Supp. at 573. "[P]romises of future benefits," the district court stated, "cannot be a substitute for present 'property' under Sec. 272(a)." Id. at 574. The court accordingly held as a matter of law that the transfers to Murphy were fraudulent under DCL Sec. 273-a.
 
 
 30
 The district court also found that Frank's gifts of the ring and the boat, which were conveyed independently of the prenuptial agreement, were fraudulent conveyances. Murphy does not appeal the judgment as to the boat, and although she expresses moral outrage that the court could find the gift of an engagement ring to be susceptible to avoidance as a fraudulent conveyance, she does not raise any intelligible legal arguments on this score; certainly her promise to marry Frank does not constitute "property" conveyed in exchange for the ring.
 
 
 31
 Rather, the gravamen of Murphy's appeal[4] is her claim that she gave fair consideration for the property she received pursuant to the prenuptial agreement, by giving up, in the same agreement, her statutory marital rights. She argues that her agreement to forsake marital rights itself was a conveyance of property in good faith and in fair exchange for the residence and bonds, and thus constituted "fair consideration" under DCL Sec. 272(a).
 
 
 32
 Section 272(a) says that fair consideration is given for property when "in exchange for such property, ... as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." The test is profitably analyzed as follows: (1) Murphy, as the recipient of the debtor's property (the residence and the bonds), must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a "fair equivalent" of the property received; and (3) such exchange must be "in good faith."[5]
 
 
 33
 Judge Brieant did not make findings or discuss the second and third elements--fair equivalent value and good faith. Rather, he considered only the first element and ruled against Murphy as a matter of law: she did not convey property or discharge an antecedent debt in exchange for the residence and bonds. Murphy does not contend there was an antecedent debt; her claim is that she conveyed property. She is incorrect. What she did was to make an executory promise; she gave up certain contingent rights that otherwise might accrue to her benefit in the future, if she married Frank and if she later divorced him or he predeceased her. A promise of this sort is not a conveyance of property.
 
 
 34
 The term "conveyance" is defined in DCL Sec. 270 as "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." Murphy argues that she pledged intangible property--by definition, a conveyance. But in fact she did not; at most what she promised in exchange for the residence and bonds was to give up contingent, inchoate interests in property. Cf. Federal Deposit Ins. Co. v. Malin, 802 F.2d 12, 17 (2d Cir.1986) (separation agreement in which husband agreed to transfer residence to wife was a "conveyance" and not a mere "executory contract to convey real property" where wife's rights came immediately into existence upon signing agreement, and transfer was not contingent on parties' obtaining divorce).
 
 
 35
 The conveyances to Murphy, if not reachable by creditors under the Fraudulent Conveyance Act, would shelter Frank's assets from parties he wronged. He could empty his estate with impunity when sued by his victims, transfer his property to his fiancee and receive nothing but inchoate interests in return--nothing from which HBE could recover its judgment--and yet enjoy the benefits of the property now nominally owned by his wife. That is the sort of injustice fraudulent conveyance law is designed to prevent. See Orr v. Kinderhill Corp., 991 F.2d at 36 (quoting 1 G. Glenn, Fraudulent Conveyances and Preferences Sec. 195, at 348 (rev. ed. 1940)) (" 'real test of a fraudulent conveyance ... is the unjust diminution of the debtor's estate' ").
 
 
 36
 Murphy relies heavily upon FDIC v. Malin, but the decision does not help her. The issue there (as well as in the state court decisions cited by Murphy) was whether a judgment creditor of the husband could set aside as fraudulent the husband's conveyance of a residence to his wife in a separation agreement while suit was pending against him. This Court held that the wife was protected from the creditor by virtue of DCL Sec. 278, which provides that a creditor may have a fraudulent conveyance set aside except as to "a purchaser for fair consideration without knowledge of the fraud at the time of the purchase." Id. at 16. That provision itself is not at issue in the present case (Murphy did not disclaim knowledge of the pending RICO suit at the time of the transfers), but the Malin decision is relevant because the Court--after determining that the conveyance of the house was effected by the separation agreement, prior to the date of the creditor's judgment lien, and that the wife had no knowledge of the fraud at the time of the conveyance--had to decide whether the wife took the residence "for fair consideration," as defined in Sec. 272.
 
 
 37
 The Malin Court held that the three elements of Sec. 272 identified above were established. First, and most important here, the residence was exchanged in satisfaction of an antecedent debt. "In the domestic relations context, it is well settled in New York that a husband's obligation to support his wife is an antecedent debt sufficient to satisfy the definition of fair consideration." Id. at 18.
 
 
 38
 Applying the definition of fair consideration established by section 272 and as refined by New York precedent, we likewise conclude that the conveyance at issue here was entered into for fair consideration. At the time the separation agreement was executed, Leonard Malin was under an affirmative obligation to provide support to his wife. Additionally, he had antecedent liability for maintenance and child support. In satisfaction of his antecedent debts, Leonard Malin conveyed real estate and other property to his wife.
 
 
 39
 Id. at 19 (citations omitted). When the prenuptial agreement in this case was signed, by contrast, Frank had no affirmative duty to provide support to Susan Murphy and no antecedent debts owed to her. In exchange for the residence and bonds, Murphy neither conveyed property nor, unlike Phyllis Malin, did she release antecedent debts. That is the fundamental difference between the Malins' agreement and the Frank-Murphy agreement, as concerns the rights of creditors.
 
 
 40
 The Court in Malin went on to hold that the wife had acted in good faith as she had no knowledge of her husband's indebtedness, and that the consideration she gave was of equivalent value. Id. at 19-20. In reference to the latter point, the Court noted that a "separation agreement works the relinquishment of rights and remedies otherwise conferred by law" and that the Malins' agreement had the earmark of a "bargained for" contract. Id. at 20. Murphy latches onto this language, arguing that because her prenuptial agreement with Frank has the same characteristics (a contentious point), conveyances made pursuant to it cannot be challenged by creditors as fraudulent. But the Malin Court made these observations only to show fair equivalent value; the other elements of Sec. 272 must also be satisfied to avoid a finding of presumptive fraud under Sec. 273-a. As shown above, Murphy has failed as a matter of law to establish the first element--that she conveyed property or discharged an antecedent debt in exchange for the residence and bonds.
 
 
 41
 Murphy also relies upon Miele v. United States, 637 F.Supp. 998 (S.D.Fla.1986), which supports her appeal insofar as it held that a waiver of marital rights in a prenuptial agreement constituted valuable consideration in exchange for a parcel of real property, thereby defeating the government's effort to set aside as fraudulent the conveyance of the property. Id. at 1000. But the court in Miele was not construing a provision similar to Sec. 272 of New York Debtor & Creditor Law, which defines "fair consideration" in specific terms. Rather, the court denied relief to the government because it failed to show that the property had been conveyed to the fiancee with fraudulent intent. And one indication of the lack of fraudulent intent, the court noted, was that the fiancee had relinquished "some valid marital rights" in exchange for the property. Id.
 
 
 42
 We do not hold that a prenuptial agreement may never be supported by consideration. Indeed, we need not and do not decide whether the Murphy-Frank prenuptial agreement is supported by consideration as concerns the rights of Murphy and Frank to enforce that agreement. Nor do we hold that all prenuptial agreements are per se constructively fraudulent as to creditors. We hold only that the contingent property interests relinquished by Murphy in her prenuptial agreement with Frank did not constitute "fair consideration," as defined in DCL Sec. 272, adequate to save Frank's transfers to Murphy from being set aside as fraudulent conveyances under DCL Sec. 273-a. The district court's award of summary judgment and order with respect to the challenged conveyances to Murphy are accordingly affirmed.
 
 THE CONVEYANCES TO GOLDSTEIN
 
 43
 It is conceded that the North Broward Bond, Chern Mortgage and Fox Run Note were transferred to Goldstein prior to judgment in the RICO case, in large part to secure the payment of future legal fees and expenses. In exchange Goldstein promised to render extensive legal services, over an extended period of time and in several courts, for an agreed flat fee of $350,000. That promise does not constitute "fair consideration" under the statute.
 
 
 44
 DCL Sec. 272(b) provides that fair consideration is given for property when the property "is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small" (emphasis added). Goldstein strives hard to label its promised services a "present" advance, but the facts are just not there. In its main brief on appeal (at 6), Goldstein avers: "The legal work to be performed was fixed and definite and required the Defendant attorneys to prosecute this appeal from a lengthy and prolonged three month trial,[6] engage specified counsel to perform legal work on the appeal, and to represent Defendants Hiram J. Frank, H.H. Frank Enterprises, Inc. and Hiram H. Frank in proceedings supplementary to Judgment [in both Florida and New York]." In reality, the work contemplated was neither "fixed" nor "definite," but was rather of considerably uncertain scope and duration (the present appeals being an illustration). See Clarkson Company Ltd. v. Shaheen, 525 F.Supp. 625, 630 (S.D.N.Y.1981) (transfer of shares to lawyer to secure future services that were "open-ended, indefinite, of highly uncertain duration" was fraudulent conveyance under New York law); see also Hay v. Duskin, 9 Ariz.App. 599, 604-605, 455 P.2d 281, 286-87 (1969) (under Arizona's counterpart statute, fixed and definite future attorney's services, to be commenced immediately, may constitute fair consideration, where there is good faith and proportionality of value); see generally Annot., 45 A.L.R.2d 500 (1956). Where to draw the line between permissible present advances and promises of indefinite services may be difficult in close cases, but this does not appear to us to be a close case. The extended legal work envisioned by Frank and Goldstein certainly did not constitute a "present advance" for purposes of DCL Sec. 272(b). Again, there is no need to reach, and the district court did not reach, the factual issues of good faith and equivalent value.
 
 
 45
 Goldstein also argues on appeal that the transfers were expressly allowed in a restraining order signed by Judge Goettel on November 9, 1992, which enjoined all defendants in the RICO action from transferring any property except as ordered by the court, and except for "reasonable living expenses and attorneys fees." Goldstein misreads Judge Goettel's order as "permitt[ing] the defendants to transfer their property in order to pay past and future attorneys' fees." Goldstein Reply Brief at 1 (emphasis added). The order authorized Frank to pay reasonable attorney's fees; it did not authorize him to make fraudulent conveyances to his attorneys.
 
 
 46
 The district court correctly held that Goldstein's argument "runs counter to the text of New York Debtor and Creditor Law Sec. 272 ... which requires that property be exchanged for fair consideration which is present." HBE III, 851 F.Supp. at 574. As the court also aptly observed, "[w]hile ability to pay legal expenses is often essential to protection of a citizen's rights, a blanket authorization for transfers at the expense of creditors for unevaluated future legal services would put the Bar in a position of being subject to frequent suspicion of unjust involvement in schemes of the very kind shown at trial in the prior [RICO] case." Id.
 
 
 47
 Goldstein further asserts, however, that he was also owed fees--$75,010--for services performed through October 30, 1992, that is, prior to the conveyances at issue. If true, to that extent, the property conveyed to Goldstein would satisfy the "antecedent debt" prongs of DCL Sec. 272(a) and (b). Nonetheless, fair consideration is still lacking as a matter of law with respect to the $227,000 bond and $278,000 note, because the conceded values of those two securities each far exceeds the allegedly outstanding legal fees. Thus, under Sec. 272(a), the value of antecedent debt satisfied ($75,010) is not a "fair equivalent" of the bond or note conveyed to Goldstein; under Sec. 272(b), the value of antecedent debt secured is "disproportionately small as compared with the value of the property." See Clarkson Company, 525 F.Supp. at 629-30 (value of stock pledged to debtor's attorney was grossly disproportionate to antecedent debt). We therefore conclude as a matter of law that fair consideration was not given for two of the three challenged conveyances to Goldstein--the North Broward Bond and the Fox Run Note--and these are subject to being set aside as constructively fraudulent.
 
 
 48
 The circumstances relating to the Chern Mortgage are somewhat different. That mortgage, which secured a debt of approximately $144,000 at the time of its transfer to Goldstein, apparently encumbers a chicken farm that is no longer in operation. We believe that genuine questions of fact exist as to whether the present value of the Chern Mortgage is a "fair equivalent" of the $75,010 under Sec. 272(a), or whether the $75,010 is "disproportionately small as compared with" the present value of the mortgage under Sec. 272(b). See United States v. McCombs, 30 F.3d 310, 326 (2d Cir.1994) (sufficiency of consideration under DCL Sec. 272 depends on facts and circumstances of each particular case). HBE is therefore not entitled to summary judgment as to the Chern Mortgage.
 
 
 49
 Judge Brieant granted summary judgment to HBE as to the North Broward Bond only, voiding the transfer and awarding judgment against Goldstein in the amount of the bond plus interest. That order is affirmed over Goldstein's appeal. Without explanation, however, Judge Brieant did not void the Chern Mortgage and the Fox Run Note. Aside from the matter of the alleged $75,010 in prior legal fees, we see no basis in this record for differentiating among the three conveyances.
 
 
 50
 Accordingly, for the reasons set forth above, we reverse the district court decision insofar as it dismissed HBE's claims as to the Chern Mortgage and the Fox Run Note. HBE is entitled to summary judgment on the Fox Run Note claim, and we remand for an appropriate disposition, including the calculation of interest. As to the Chern Mortgage, we remand for the district court to make factual findings on the following questions, if necessary: whether the $75,010 were indeed earned as claimed, prior to the judgment in the RICO action; whether that amount is reasonable under Judge Goettel's restraining order; whether the present value of the Chern Mortgage represents a "fair equivalent" of the $75,010 under DCL Sec. 272(a), or whether the $75,010 is "disproportionately small" under DCL Sec. 272(b); whether Goldstein acted "in good faith" under either part of DCL Sec. 272; and, finally, whether Frank transferred the mortgage with the "actual intent" to hinder, delay or defraud HBE under DCL Sec. 276. If Goldstein prevails on all of these matters, the Chern Mortgage should not be set aside.
 
 THE CONVEYANCES TO CLEMENCE FRANK
 
 51
 The district court granted summary judgment to Clemence Frank, denying HBE any relief with respect to the bonds transferred to her in August 1991 and October 1992. HBE III, 851 F.Supp. at 575. This ruling is challenged in HBE's cross-appeal.
 
 
 52
 The district court concluded that HBE failed to come forward with sufficient evidence to establish the existence of a genuine issue of material fact with respect to its claims against Clemence Frank. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We disagree. HBE presented evidence supporting its claims that the conveyances of bonds to Clemence Frank were constructively fraudulent under DCL Sec. 273-a and actually fraudulent under DCL Sec. 276--for example, that Clemence Frank paid in exchange significantly less cash ($355,000) than the value of the bonds ($482,000), that said cash cycled through Frank's accounts and ended up benefiting Clemence Frank herself (i.e., illusory consideration) or was reconveyed by Frank for less than fair consideration or with fraudulent intent, and that Clemence Frank knew about the pending RICO judgment. These are material facts in dispute. See HBE IV, 48 F.3d at 635 (multiple transactions may be collapsed and treated as phases of single transaction where (1) consideration received in exchange for initial transfer of debtor's property is reconveyed by debtor for less than fair consideration or with fraudulent intent, and (2) transferee of initial conveyance has actual or constructive knowledge of scheme); Orr v. Kinderhill Corp., 991 F.2d at 35 (court "will not turn a blind eye to the reality" that challenged conveyance and subsequent transfers "constituted a single, integrated transaction").
 
 
 53
 Accordingly, we hold that the district court erred in granting summary judgment to Clemence Frank, and the matter is remanded for further proceedings, consistent both with this opinion and the opinion of this Court in HBE IV, 48 F.3d 623.
 
 CONCLUSION
 
 54
 We affirm the judgment of the district court as to the claims involving Susan Murphy Frank and Wallace Berkowitz, affirm as to the claim involving the North Broward Bond, reverse and remand as to the claims involving the Chern Mortgage and the Fox Run Note, and reverse and remand as to the claims involving Clemence Frank.
 
 
 55
 Costs to be taxed equally against defendants Murphy, Goldstein and Clemence Frank.
 
 
 
 *
 The Honorable Shira A. Scheindlin, District Judge, United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The RICO judgment was entered on November 10, 1992 and subsequently affirmed by this Court. HBE Leasing Corp. v. Frank, 22 F.3d 41 (2d Cir.1994) ("HBE II "). HBE Leasing Corp. and other leasing companies had entered into agreements with Frank whereby the leasing companies would purchase and lease back what they thought were new egg-harvesting machines to Frank, who operated large chicken farms. The leasing companies eventually discovered, after Frank stopped making lease payments, "that no actual equipment was ever purchased or installed, and that the entire leasing arrangement was a sham concocted" by Frank. Id. at 43. Judgment against all defendants amounted to almost $25 million
 
 
 [2]
 Any disputes or discrepancies as to the monetary value of these or other assets involved in this case are not relevant to the issues on appeal. Listed here are rounded numbers derived from the May 24, 1994 Final Judgment in HBE III
 
 
 [3]
 These values are taken from Goldstein's brief on appeal
 
 
 [4]
 For convenience, we omit reference to Wallace Berkowitz, who joins Murphy's appeal insofar as it concerns the bonds which he holds as trustee on Murphy's behalf
 
 
 [5]
 The "good faith" in Sec. 272 is the good faith of the transferee--in this case, Murphy (and Goldstein and Clemence Frank). By contrast, to prove actual fraud under Sec. 276, a creditor must show intent to defraud on the part of the transferor
 
 
 [6]
 The context indicates that by "this appeal" Goldstein is actually referring to the appeal from the RICO verdict