**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP Nos.  CC-16-1322-FTaKu |
| ) | CC-16-1323-FTaKu |
| CASTLE TRADING, INC., ) | CC-16-1324-FTaKu |
| ) | CC-16-1352-FTaKu |
| Debtor. ) | CC-16-1353-FTaKu |
| _____ ) | CC-16-1354-FTaKu |
| ) | (Related Cross-appeals) |
| RICHARD K. DIAMOND, Chapter 7 ) | |
| Trustee, ) | Bk. No.   2:13-bk-15021-BB |
| ) | |
| Appellant/Cross-Appellee,) | Adv. Nos. 2:14-ap-01022-BB |
| ) | 2:14-ap-01122-BB |
| v. ) | 2:14-ap-01312-BB |
| ) | |
| MESISCA RILEY & KREITENBERG ) | |
| LLP, ) | |
| ) | **MEMORANDUM**[*] |
| Appellee/Cross-Appellant.) | |
| _____) | |

Argued and Submitted on May 18, 2017
at Pasadena, California

Filed – May 31, 2017

Appeals from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Chief Bankruptcy Judge, Presiding

_____

Appearances:     George E. Schulman of Danning, Gill, Diamond &
Kollitz, LLP argued on behalf of Appellant/Cross-
Appellee Richard K. Diamond, Chapter 7 Trustee;
Dennis P. Riley of Mesisca Riley & Kreitenberg,
LLP argued on behalf of Appellee/Cross-Appellant
Mesisca Riley & Kreitenberg LLP.

_____

Before: FARIS, TAYLOR, and KURTZ, Bankruptcy Judges.

_____

     [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Debtor Castle Trading, Inc. retained Appellee/Cross-Appellant Mesisca Riley & Kreitenberg LLP ("MRK") to provide specified legal services. To pay for these future services, Castle Trading signed a promissory note in favor of MRK and deeds of trust encumbering certain properties. After Castle Trading filed for bankruptcy protection, Appellant/Cross-Appellee Richard K. Diamond, Chapter 7[1] Trustee ("Trustee"), sought to avoid the promissory note and deeds of trust as fraudulent transfers, arguing that the prepetition executory contract for MRK's future legal services did not provide "reasonably equivalent value" in exchange for the promissory note and deeds of trust. The bankruptcy court disagreed, holding that the promise of future services was reasonably equivalent value.

On appeal, the Trustee argues that the bankruptcy court erred because the value of the executory contract was uncertain or limited and did not provide reasonably equivalent value. MRK cross-appeals, arguing that the agreement could not have been a fraudulent transfer because Castle Trading was not insolvent inasmuch as a $3.8 million "shareholder loan" was actually a capital contribution, as opposed to a liability.

We AFFIRM the bankruptcy court's holding that the agreement provided reasonably equivalent value. We need not reach the points of error raised in MRK's cross-appeals.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

## FACTUAL BACKGROUND

**A.    The 2008 Action and 2011 Action**

Yuri and Natalia Plyam are the sole owners, directors, and officers of Castle Trading.  It began as a commodities brokerage but later transitioned to real estate development and investment.

In January 2008, Precision Development, LLC ("Precision"), a company previously owned by Mr. Plyam, filed a complaint against the Plyams in the state superior court (the "2008 Action").  Essentially, Precision alleged that the Plyams diverted substantial funds that Precision's investors had wired to them for a real estate development project and instead used the money for personal gain.  In July 2010, MRK substituted in as counsel for the Plyams.

Following a jury trial, the superior court entered judgment against the Plyams in the amount of $10.3 million.  The Plyams unsuccessfully appealed the judgment.

In July 2011, Precision filed a lawsuit against Castle Trading, the Plyams, and Ms. Plyam's mother, Anna Logvin, in state court (the "2011 Action"), alleging that the Plyams fraudulently transferred assets to Castle Trading.  Precision recorded a lis pendens against each of Castle Trading's real property assets.

**B.    The Fee Agreement between Castle Trading and MRK**

Because of MRK's familiarity with the Plyams and Castle Trading, the defendants sought MRK's representation in the 2011 Action.

On September 7, 2011, Castle Trading entered into a fee agreement with MRK (the "Fee Agreement").  MRK agreed to

3

represent Castle Trading in three state court proceedings: (1) the 2011 Action; (2) Castle Trading, Inc. v. Aframian, a breach of contract action (the "Aframian Action"); and (3) Castle Trading, Inc. v. Greer, an unlawful detainer action (the "Greer Action"). The Fee Agreement recited that, because of the substantial judgment against the Plyams in the 2008 Action, Castle Trading did not have the financial ability to pay MRK. Therefore, the parties agreed that: (1) MRK would represent Castle Trading in the Aframian Action for an earned fee of $202,500, based on an estimate of 270 hours at $750 per hour; (2) MRK would represent Castle Trading in the 2011 Action for an earned fee of $412,500, based on an estimate of 550 hours, and $750 per hour for time spent in excess of 550 hours; and (3) MRK would represent Castle Trading in the Greer Action for an earned fee of $20,000, based on an estimate of 40 hours at $500 per hour. Castle Trading acknowledged that it would be indebted to MRK for the total amount of $635,000 (plus any amount billed over the estimated 550 hours in the 2011 Action). Accordingly, Castle Trading executed a promissory note in favor of MRK in the amount of $635,000.

MRK agreed to delay collection of the $635,000 and instead take as security deeds of trust encumbering certain real property owned by Castle Trading. The deeds of trust were recorded against five of Castle Trading's properties in California, which were known as: (1) the "Hayvenhurst Property," (2) the "Alta Mesa Property," (3) the "Meadow Bay Property," (4) the "Bay View Property," and (5) the "Angelo Property."

MRK advised Castle Trading to consult independent counsel

4

prior to entering into the Fee Agreement. Ms. Plyam testified that three other attorneys told her that the Fee Agreement was a "great deal," especially because no other attorney would likely agree to represent Castle Trading.

MRK represented Castle Trading in each of the three lawsuits. It obtained a judgment in favor of Castle Trading in the Aframian Action, successfully ejected the tenants in the Greer Action, and represented Castle Trading in the 2011 Action until Castle Trading filed for bankruptcy.[2] According to its billing records, if MRK were billing Castle Trading on an hourly basis, its fee (based on the recorded time) would have been $217,819.[3]

**C. Castle Trading's bankruptcy filing and the Trustee's adversary proceedings**

On February 23, 2013, Castle Trading filed a chapter 7 petition in the United States Bankruptcy Court for the Central District of California. On the same day, the Plyams filed a joint chapter 7 petition. The bankruptcy court initially appointed Alberta P. Stahl as chapter 7 trustee in both cases; Ms. Stahl later resigned from the Castle Trading case to avoid a conflict with her role as trustee in the Plyams' personal

---

[2] In February 2012, the state of California suspended Castle Trading's corporate status for nonpayment of taxes. On March 23, 2012, Castle Trading filed a Notice of Suspension and Inability to Participate in Litigation in the 2011 Action.

[3] In the 2011 Action, MRK's recorded fees and costs totaled $197,317.25. In the Aframian Action, MRK's recorded fees and costs totaled $18,652.87. In the Greer Action, MRK's recorded fees and costs totaled $1,849.

5

bankruptcy case. The bankruptcy court thereafter appointed Mr. Diamond as successor chapter 7 trustee.

In its schedules, Castle Trading estimated that it held assets totaling $3,262,242. It listed liabilities of $16,070,990, including $1,932,533 in secured debts and a $3,814,457 "loan from shareholder" as an unsecured, nonpriority debt. The schedules identified Mr. Plyam as the creditor on the shareholder loan.

Proofs of claims were filed by a number of creditors. Of relevance to this proceeding, Ms. Stahl, the Plyams' chapter 7 bankruptcy trustee, filed a claim for $3,316,568.04 based on the shareholder loan. MRK filed a proof of claim against Castle Trading in the amount of $728,769.83, based on the terms of the Fee Agreement.

The bankruptcy court approved the Trustee's sale of the Hayvenhurst Property, Alta Mesa Property, Meadow Bay Property, and Bay View Property. The court order directed that the disputed liens held by MRK and others were removed from the properties and attached to the net sale proceeds.

After the sale of Castle Trading's properties, the Trustee filed adversary complaints to avoid the liens and recover fraudulent transfers concerning the Hayvenhurst Property, the Alta Mesa Property, and the Meadow Bay Property.[4] As relevant to

---

[4] The Trustee filed three separate complaints, one per property. Diamond v. Greater Atlantic Bank, Adv. Pro. 2:14-ap-01022-BB concerns the Meadow Bay Property and is on appeal as BAP No. CC-16-1322; Diamond v. Logvin, Adv. Pro. 2:14-ap-01122-BB concerns the Hayvenhurst Property and is on
(continued...)

6

these appeals, the Trustee alleged that Castle Trading "received less than a reasonably equivalent value in exchange for the MRK Deed of Trust and the MRK Obligation" and that he "is entitled to avoid the MRK Obligation and the MRK Deed of Trust."

**D.   The trial**

The bankruptcy court scheduled a consolidated trial for August 24, 2016 in all three adversary proceedings.[5]  Prior to the trial, the bankruptcy court entered joint pretrial orders (collectively, the "Pretrial Order") in the three adversary proceedings.  The Pretrial Order provided that the following issues of fact, among others, remained to be litigated:

> 13. What type of fee agreement was the 2011 Agreement?
>
> 14. When the 2011 Fee Agreement was signed, was the entire fee earned upon receipt?
>
> 15. When the 2011 Fee Agreement was signed, was the entire fee earned upon receipt of the Deeds of Trust?

The Pretrial Order included the following issues of law to be litigated:

> 5. Whether reasonably equivalent value was provided by MRK to the Debtor in exchange for the MRK Deeds of Trust and the MRK Note.
>
> . . . .
>
> 13. Whether the 2011 Fee Agreement provides for an earned on receipt retainer or a flat fee.

---

[4](...continued)
appeal as BAP No. CC-16-1323; and Diamond v. Logvin, Adv. Pro. 2:14-ap-01312-BB concerns the Alta Mesa Property and is on appeal as BAP No. CC-16-1324.

[5] The Trustee settled with all other defendants prior to trial; MRK was the only remaining party.

Following the trial, the bankruptcy court orally ruled that the Trustee was not entitled to avoid the promissory note and deeds of trust as fraudulent transfers. It held that the Trustee did not meet his burden to prove an actual fraudulent transfer. As to constructive fraudulent transfer, the bankruptcy court considered whether Castle Trading received reasonably equivalent value by looking at the work done by MRK, its billing records, its time estimates, and other circumstances surrounding the litigation. It concluded that the Trustee did not provide sufficient evidence to establish lack of reasonably equivalent value.

On September 22, 2016, the bankruptcy court issued its findings of fact and conclusions of law in the three adversary proceedings. In relevant part, it found that: (1) the Fee Agreement was a flat fee for two of the matters and a flat fee for a certain number of hours then hourly thereafter for the third matter; (2) MRK's records reflect $212,165.00 in hourly billing and $6,554.12 in costs for litigation in the three matters identified in the Fee Agreement; (3) the deeds of trust were not provided by Castle Trading to MRK as security for an Earned on Receipt Retainer; and (4) the deeds of trust secured payment of the fee charged by MRK to handle the three proceedings.

In relevant part, the court made the following conclusions of law: (1) MRK provided Castle Trading with reasonably equivalent value in exchange for the deeds of trust and promissory note; (2) the Trustee may not avoid the deeds of trust and promissory note as fraudulent transfers pursuant to § 544(b)

8

and California state law; and (3) the Trustee failed to meet his burden to prove that the transfers were fraudulent transfers and avoidable.

The Trustee timely filed his notices of appeal, and MRK timely filed its "protective" cross-appeals.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(H). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in holding that MRK's promise to provide future legal services under the Fee Agreement represented "reasonably equivalent value" such that the promissory note and deeds of trust in favor of MRK were not constructive fraudulent transfers.

## STANDARDS OF REVIEW

As a general rule, we review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Decker v. Tramiel (In re JTS Corp.), 617 F.3d 1102, 1109 (9th Cir. 2010).

We review de novo questions of statutory interpretation, including whether a particular type of consideration constitutes "value." Gladstone v. Schaefer (In re UC Lofts on 4th, LLC), BAP No. SC-14-1287-JuKlPa, 2015 WL 5209252, at *15 (9th Cir. BAP Sept. 4, 2015) (citing Maddox v. Robertson (In re Prejean), 994 F.2d 706, 708 (9th Cir. 1993)). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th

9

Cir. 1988).

But when we consider whether the value is "reasonably equivalent," a finding concerning the value of the transferred property "is a finding of fact which may be reversed only if it is shown that it was clearly erroneous." In re JTS Corp., 617 F.3d at 1109 (citations omitted). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.), 262 F.3d 725, 729 (8th Cir. 2001) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)); see Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (A factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed."). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. United States v. Elliott, 322 F.3d 710, 714 (9th Cir. 2003).

## DISCUSSION

These appeals deal only with the Trustee's contention that he is entitled to avoid the promissory note and deeds of trust as fraudulent transfers. The Trustee does not contend (in these appeals) that the Fee Agreement is subject to challenge under state law (other than state fraudulent transfer provisions). The bankruptcy court correctly decided the narrow issue before it.

10

**A.    The bankruptcy court did not err in holding that the Fee Agreement represented "reasonably equivalent value."**

The Trustee's primary issue on appeal challenges the bankruptcy court's holding that MRK provided reasonably equivalent value for the $635,000 promissory note and deeds of trust.  We discern no error.

A bankruptcy trustee may bring an action to avoid a prepetition transfer that is allegedly either intentionally or constructively fraudulent under §§ 548(a)(1)(A) or (B) or applicable state law.  In relevant part, § 548(a) provides:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily -
>
> . . . .
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

§ 548(a)(1).  In other words, a transfer is constructively fraudulent if (1) the debtor made the transfer on or within two years before the date of filing the bankruptcy petition, (2) the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation," and (3) the debtor was suffering from certain kinds of financial distress.  Official Committee of Unsecured Creditors v. Hancock Park Capital II, L.P. (In re Fitness Holdings Int'l, Inc.), 714 F.3d 1141, 1145 (9th Cir. 2013) (internal citations omitted).  California law is

11

substantially similar.  See Cal. Civ. Code §§ 3439.04, 3439.05.[6]

These appeals involve § 548(a)(1)(B)(i), which considers whether Castle Trading received reasonably equivalent value for the promissory note and deeds of trust.  Our inquiry follows a two-step process: "First, the court must determine that the debtor received value in exchange for the transfer. . . . Second, if there was value in exchange, the court must determine whether the value of what was transferred was reasonably equivalent to what the debtor received."  Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP), 408 B.R. 318, 341 (Bankr. N.D. Cal. 2009); see also Hasse v. Rainsdon (In re Pringle), 495 B.R. 447, 463 (9th Cir. BAP 2013) ("An examination into reasonably equivalent value is comprised of three inquiries: (1) whether value was given; (2) if value was given, whether it was given in exchange for the transfer; and (3) whether what was transferred was reasonably equivalent to what was received.").  The Trustee must prove each element of his fraudulent transfer claim by a preponderance of the evidence.  Flemmer v. Weiner (In re Vill. Concepts, Inc.), BAP No. EC-15-1186-JuFD, 2015 WL 8030974, at *7 (9th Cir. BAP Dec. 4, 2015).

_____

[6] "California's fraudulent conveyance statutes are similar in form and substance to the Code's fraudulent transfer provisions.  Both allow a transfer to be avoided where 'the debtor did not receive a "reasonably equivalent value" in exchange for the transfer and [the debtor] was either insolvent at the time of the transfer or was engaged in business with unreasonably small capital.'"  Wyle v. C.H. Rider & Family (In re United Energy Corp.), 944 F.2d 589, 594 (9th Cir. 1991) (citation omitted).

12

**1. MRK's promises constituted "value."**

The Trustee argues that MRK's promise to perform legal services in the future did not qualify as "value" at all. We disagree.

The Bankruptcy Code defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor[.]" § 548(d)(2)(A). State law is similar. See Cal. Civ. Code § 3439.03; In re UC Lofts on 4th, LLC, 2015 WL 5209252, at *16.

In determining whether the debtor received value, "a court must consider whether, based on the circumstances that existed at the time of the transfer, it was legitimate and reasonable to expect some value accruing to the debtor . . . ." Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.), 444 F.3d 203, 212 (3d Cir. 2006) (quotations and citation marks omitted).

The Ninth Circuit has not explicitly stated whether an executory contract or promise of future services can qualify as "value." However, in Pringle, we considered the "value" prong of the "reasonably equivalent value" analysis and stated: "'Case law has embroidered this concept to include "any benefit" to the debtor, "direct or indirect" as value.' Indeed, with only limited exceptions, **'any . . . kind of enforceable executory promise is value for purposes of section 548.'** Regardless of its form, the economic benefit must be real and quantifiable." In re Pringle, 495 B.R. at 463 (quoting 5 Collier on Bankruptcy

13

¶ 548.05[5] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2013)).[7] Other courts also adopt this view. See Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors (In re R.M.L., Inc.), 92 F.3d 139, 152 (3d Cir. 1996) ("[S]o long as there is some chance that a contemplated investment will generate a positive return at the time of the disputed transfer, we will find that value has been conferred."); Dobieco, Inc. v. Brown (In re Brown), 265 B.R. 167, 175 (Bankr. E.D. Ark. 2001) (assumption of obligation to pay rent is "value" given in exchange for assignment of lease); Krommenhoek v. Nat. Res. Recovery, Inc. (In re Treasure Valley Opportunities, Inc.), 166 B.R. 701, 704-05 (Bankr. D. Idaho 1994) (holding that monies paid under an installment contract were not recoverable as a fraudulent transfer because in exchange for the two payments, the debtor received: (1) discharge of the obligation to pay the transferee under the contract terms and (2) property in the form of the continued vitality of the contract).

The Trustee's reliance on the Second Circuit's decision in HBE Leasing Corp. v. Frank, 61 F.3d 1054 (2d Cir. 1995), is unavailing. In that case, the appellate court held that the judgment debtor's transfer of bonds, a mortgage, and notes to his attorney "in large part to secure the payment of future legal fees and expenses" valued at $350,000 was not "fair consideration." 61 F.3d at 1060. But that case does not stand

---

[7] The Trustee argues that Pringle is inapplicable because the discussion of fraudulent conveyance law as supported by Collier "is not essential to its holding." Pringle's statements are persuasive even if they are dicta.

14

for the proposition that a contract for future legal services can never amount to "value" as a matter of law; rather, it held that, based on the particular facts of the case, the agreement was undefined and of uncertain duration such that it could not give "fair consideration."  Indeed, it acknowledged that a services contract may be fair consideration where the services are definite and fixed.  Id. at 1061.  As discussed below, the bankruptcy court in the present cases accepted the evidence that the Fee Agreement was a flat-fee (and semi-flat-fee) agreement for specific cases and services.  HBE Leasing does not aid the Trustee's case.

The only other cases on which the Trustee relies are nineteenth century cases from outside of the Ninth Circuit.  We are not bound by any of these cases.

We are also guided by the principles of statutory interpretation.  The doctrine of expressio unius est exclusio alterius, meaning "to express or include one thing implies the exclusion of the other, or of the alternative," Black's Law Dictionary 620 (8th ed.), "creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 885 (9th Cir. 2005).  "The expressio unius canon applies only when 'circumstances support[ ] a sensible inference that the term left out must have been meant to be excluded.'"  N.L.R.B. v. SW Gen., Inc., 137 S. Ct. 929, 940 (2017) (citation omitted).

Section 548(d)(2)(A) excludes from the definition of value "an unperformed promise to furnish support to the debtor . . . ."

15

Similarly, the corresponding state statute excludes "an unperformed promise . . . to furnish support to the debtor or another person." Cal. Civ. Code § 3439.03. The Fee Agreement is not a promise to furnish support. A reasonable reading of the statute supports the negative implication that other types of future promises, such as a promise of legal services, can qualify as "value" under the statute. See In re Treasure Valley Opportunities, Inc., 166 B.R. at 705 ("The strong negative implication of this exclusion is that any other kind of enforceable executory promise is value for purposes of section 548.").

The Trustee argues that the bankruptcy court erred in not considering the question of "value." But the Trustee does not show that he explicitly raised this issue before the bankruptcy court. See Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 543 (9th Cir. 2016) ("[g]enerally, an appellate court will not hear an issue raised for the first time on appeal"). Moreover, implicit in the bankruptcy court's holding that MRK gave "reasonably equivalent value" is the determination that the Fee Agreement constituted value.

Accordingly, we hold that MRK gave "value."

**2.    The value of MRK's promise was "reasonably equivalent."**

We next consider whether the value provided was reasonably equivalent to $635,000. The Trustee contends that the bankruptcy court erred by considering the future value of the legal services (as opposed to the value at the time the parties executed the Fee Agreement) and by not limiting the value of the Fee Agreement to the amounts recorded in MRK's billing records. We disagree.

16

The Bankruptcy Code does not define "reasonably equivalent value." Nevertheless, we have stated:

> it "is not an esoteric concept: a party receives reasonably equivalent value . . . if it gets roughly the value it gave." "Reasonably equivalent value" is a key concept in fraudulent transfer law. As the underlying goal of § 548 is to preserve estate assets, courts assess reasonably equivalent value from the creditors' perspective.
>
> This examination requires the court to consider all of the circumstances surrounding the transfer, but "the focus is whether the net effect of the transaction has depleted the bankruptcy estate."
>
> . . . .
>
> [T]he value to the estate must be reasonably equivalent to the value given up . . . . This equivalence need not be precise. "By its terms and application, the concept of 'reasonably equivalent value' does not demand a precise dollar-for-dollar exchange."

In re Pringle, 495 B.R. at 463-64 (internal citations omitted); see In re Brobeck, Phleger & Harrison LLP, 408 B.R. at 341 ("Reasonable equivalence does not require exact equality in value, but means 'approximately equivalent' or 'roughly equivalent.'").

The bankruptcy court weighed the evidence to make a factual determination as to whether the Fee Agreement constituted reasonably equivalent value. It found the testimony of Dennis Riley, an MRK attorney, credible and found that MRK's promise to represent Castle Trading in the 2011 Action, the Aframian Action, and the Greer Action was roughly equivalent in value to $635,000. In particular, the bankruptcy court noted that Mr. Riley estimated the costs of his legal services based on prior litigation with Precision and its counsel. It stated that there was no evidence that the work was not completed or that the

17

litigation results were problematic. We hold that the bankruptcy court did not clearly err.

The Trustee argues that the value of MRK's services should be capped at $217,819, which is the amount reflected in its billing records. We again disagree in the context of this appeal. The bankruptcy court accepted Mr. Riley's testimony that the records may not have reflected all of the work done in the cases because MRK was not billing by the hour. As such, there was no exact dollar amount that could be associated with MRK's actual work. Moreover, the value that MRK provided to Castle Trading was not limited to the dollar amount in the billing records. Castle Trading needed an attorney to represent it in multiple lawsuits, but it was insolvent. MRK agreed to represent Castle Trading, despite its financial distress, and MRK was familiar with the client, its owners, the adversary, and the adversary's counsel. These factors provided additional, unquantifiable value. See Meeks v. Perroni (In re Armstrong), 234 B.R. 899, 906 (Bankr. E.D. Ark. 1999) ("reasonably equivalent value includes more than the tangible hours actually expended").

Therefore, we hold that the bankruptcy court did not err in finding that MRK provided reasonably equivalent value in exchange for the $635,000 promissory note and the deeds of trust.[8]

**B. The bankruptcy court did not err in applying the Pretrial Order.**

The Trustee argues that the bankruptcy court erred in not

---

[8] We do not address any other grounds on which the Trustee might be able to limit MRK's claim.

18

deciding two disputed questions of fact listed in the Pretrial Order. The court did not err.

The relevant part of the Pretrial Order identifies the factual issues that the parties and the court thought were necessary before the trial began. After hearing the evidence and arguments, the bankruptcy court decided that it did not need to decide some of those factual issues. This was proper.

The Trustee argues at length that the bankruptcy court should have found that the Fee Agreement was not an earned-on-receipt retainer. As we stated above, we do not reach this argument. In the fraudulent transfer analysis, the salient question was whether the Fee Agreement provided reasonably equivalent value to Castle Trading, and the bankruptcy court appropriately held that it did; it found that the value of MRK's promise was reasonably equivalent to what MRK received. The bankruptcy court was not required to determine in what legal cubbyhole to place the Fee Agreement because such a finding would not have affected its decision that the promissory note and deeds of trust were not avoidable on a fraudulent transfer theory.

## CONCLUSION

For the reasons set forth above, the bankruptcy court did not err in determining that MRK's legal services provided Castle Trading with reasonably equivalent value for the promissory note and deeds of trust. Therefore, the transfer was not a constructive fraudulent transfer, and we AFFIRM. We do not reach the issues raised in MRK's protective cross-appeals.

19