**In re John D. CORCORAN, Debtor.**

**Mary J. Sullivan, Defendant–Appellant,**

v.

**Gregory Messer, as Trustee for the Estate of John D. Corcoran, Plaintiff–Appellee.**

**No. CV 98–5981 (RR).**

United States District Court, E.D. New York.

Jan. 31, 2000.

Waller & Kaplowitz, by Jeffrey W. Waller, Hauppauge, NY, for defendant-appellant.

Honorable Elliot Spitzer, Attorney General of the State of New York, by Gregory J. Nolan, Assistant Attorney General, New York City, for plaintiff-appellee.

## Memorandum and ORDER

RAGGI, District Judge.

Defendant, Mary Sullivan, appeals from an order of Bankruptcy Judge Francis G. Conrad granting summary judgment in favor of Gregory Messer, trustee for the estate of John D. Corcoran. The trustee sued Ms. Sullivan to recover two assets that he claims were fraudulently conveyed to her by the debtor: (1) Corcoran's house and (2) a check for $ 61,824. Having reviewed the record and heard orally from the parties, this court affirms the bankruptcy court's entry of judgment as to the $ 61,824 check, but vacates the order as to the house, finding that there are disputed questions of fact that preclude a summary award as to the real property.

### Factual Background

In reviewing an award of summary judgment, this court necessarily views the evidence in the light most favorable to the non-moving party. *See Reyes v. Delta Dallas Alpha Corp.*, 199 F.3d 626, 627–28 (2d Cir.1999). Thus, the court relies only on those facts alleged by the trustee that have not been disputed. In all other respects, Ms. Sullivan "will have [her] allegations taken as true, and will receive the benefit of the doubt when [her] assertions conflict with those of the [trustee]." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).

### 1. Corcoran's Bankruptcy Filing

Debtor John D. Corcoran's financial difficulties stem from two environmental enforcement actions, one by the Town of Brookhaven, New York, and another by the New York State Department of Environmental Conservation ("DEC"). Both actions charged Corcoran with illegally depositing solid waste on commercial land in Brookhaven (the "site").

In 1991, the town secured a judgment ordering Corcoran to rehabilitate the site and to pay fines and penalties of $50,000. Collection proceedings were commenced in March 1994. Meanwhile, on June 22, 1992, the DEC also ordered Corcoran to rehabilitate the site and imposed a penalty of nearly $400,000. On March 22, 1993, the DEC sought enforcement of its order in New York State Supreme Court. On June 27, 1994, that court entered a judgment in the amount of $464,734. Faced with that judgment, as well as his obligations to Brookhaven, Corcoran filed for bankruptcy the next day.

### 2. The Relationship between Corcoran and Sullivan

Mary Sullivan and John Corcoran met in January 1992 and thereafter became romantically involved. By October 1993, the pair was living together in Ms. Sullivan's Long Island home. In November 1995, they moved to South Carolina, where they resided together until at least 1997. By April 1997, the couple was engaged to be married. Ms. Sullivan reports that in or about April 1998, the two were no longer living together. She explains that Corcoran's financial difficulties had become "too much for me. I still have affection for him, and we remain friends."

### 3. The Two Allegedly Fraudulent Transfers

#### a. The 1992 Conveyance of 38 Albany Street

Ms. Sullivan asserts that in 1992 she was seeking a real estate investment when Corcoran offered to sell her his house, located at 38 Albany Street, for $200,000. Without obtaining an appraisal or consulting any real estate agent, Ms. Sullivan bargained the price down to $150,000. She paid Corcoran half of this purchase price in cash; the balance she financed with a 75,000 mortgage held by Corcoran. The transaction formally closed on July 22, 1992, and the mortgage was properly recorded a few weeks later.

Corcoran nevertheless continued to reside in the 38 Albany Street house for at least a year after the sale. During the first six months, he paid Ms. Sullivan $1,200 per month in rent. She, in turn, sent Corcoran monthly mortgage payments of $674. In January 1993, Corcoran stopped paying rent and Ms. Sullivan responded by withholding the mortgage payment. Ms. Sullivan asserts that the two never discussed Corcoran's decision to stop paying the rent; it "just happened." At no time did Ms. Sullivan bring an action to compel rent payments or to evict. By October 1993, Corcoran had vacated 38 Albany Street and moved in with Sullivan at her home across town.

In June 1994, Sullivan learned that Corcoran had sold the mortgage to a third party, the Stanley Weisz, P.C. Retirement Plan. Soon thereafter, the mortgage was recast, and Sullivan began making monthly payments to the new obligee. The mortgage remains a valid lien on the 38 Albany Street property, and Ms. Sullivan is personally liable on the note for any deficiency.[1]

1. After it appeared that ownership of the house would become the subject of litigation, Ms. Sullivan again ceased making payments in December 1995.

#### b. The Transfer of the $61,824

At some time prior to the events pertinent to this appeal, relatives of Corcoran looted a trust established for the benefit of his mother, Leona A. Corcoran. Corcoran replenished the trust with his own money. When the looted funds were returned in 1994, the trust was able to repay Corcoran, and on or about May 22 of that year, a check payable to him was drawn on the trust account in the amount of $61,824.30. The trustee does not challenge the propriety of this payment. It is the debtor's subsequent actions with respect to the check that he asserts are fraudulent.

Specifically, when Corcoran endorsed the check, he restricted deposit to the bank account of Richard VanOrden, the attorney for the Loena A. Corcoran Trust. Three days later, a check for $61,824.30 was drawn on VanOrden's account and made payable to Ms. Sullivan. Ms. Sullivan acknowledges that she endorsed the check and deposited it in her bank account.

### 4. The Seventeen Cash Deposits Totaling $32,775

One other series of transactions between Corcoran and defendant is relevant to this appeal. Between March and December 1994, Ms. Sullivan made seventeen cash deposits into her bank account with monies totaling $32,775, all given to her by Corcoran. The trustee assumes that $6,000 of this amount comprised a legitimate transfer, representing payments by Corcoran to Ms. Sullivan to cover his living expenses in South Carolina.[2] The ultimate disposition of the remaining $26,000 is unclear. Sullivan states that "from time to time [Corcoran] has given me funds which I deposited and from which funds I wrote out checks for the support of [Corcoran's] mother, including payment of her rent."

2. That may be a generous assumption on the trustee's part. By Ms. Sullivan's own admission, Corcoran did not begin living with her in South Carolina until September 1995.

### 5. The Bankruptcy Court's Ruling

In his oral ruling granting summary judgment in favor of the trustee, Judge Conrad concluded that both of the challenged transfers were invalid since they were made with fraudulent intent at a time when Corcoran was insolvent. He cited to various "badges of fraud" evident in the record: the lack or inadequacy of consideration, the close relationship between the parties, and Corcoran's retention of the 38 Albany Street property. The court ordered Ms. Sullivan to pay the trustee $61,-824.30 plus interest, and to convey to him the 38 Albany Street property.

## Discussion

### 1. Standard of Review

■ A district court reviews a bankruptcy court's grant of summary judgment de novo. See In re Blackwood Assocs., 153 F.3d 61, 67 (2d Cir.1998); In re Maxwell Communication Corp., 198 B.R. 63, 67 (S.D.N.Y.1996). Summary judgment is appropriate only if no genuine issue of material fact remains for adjudication, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Samuels v. Mockry, 77 F.3d at 35.[3] The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-movant must then come forward with sufficient evidence on the elements essential to its case to support a verdict in its favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only if

no rational trier of fact could find in the non-movant's favor is summary judgment appropriate. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S.Ct. 2548.

### 2. New York State Fraudulent Conveyance Law

■ This cause of action arises under section 544(b) of the Bankruptcy Code, 11 U.S.C. § 544(b), which allows the trustee to rely on state fraudulent transfer law in securing the assets of an estate. New York's version of the Uniform Fraudulent Conveyance Act ("UFCA"), codified at N.Y.Debt. & Cred.Law §§ 270–81 (McKinney's 1990), offers trustees the option of proving that challenged transactions are constructively fraudulent, see § 273, or actually fraudulent, see § 276. See also HBE Leasing Corp. v. Frank, 48 F.3d 623, 636 (2d Cir.1995) [hereinafter "HBE Leasing v. Frank IV"].[4]

■ "Constructive fraud" is generally established by showing that a conveyance was made "without a fair consideration" at a time when the conveyor was insolvent. N.Y.Debt. & Cred.Law § 273. Even when a debtor is not insolvent, however, a transfer made "without fair consideration" can be constructively fraudulent under New York law. See N.Y.Debt. & Cred.Law §§ 273–a, 274, and 275. For example, under § 273–a, a conveyance unsupported by fair consideration is fraudulent if the conveyor (1) was, at the time of the transfer, "a defendant in an action for money damages" or "a judgment in such an action has been docketed against him," and (2) has "fail[ed] to satisfy the judgment." See,

---

**3.** The principles relating to summary judgment in Fed.R.Civ.P. 56 apply in full to bankruptcy proceedings. See In re Fischer, 202 B.R. 341, 345 (E.D.N.Y.1996); Fed. R.Bankr.P. 1001, 7056.

**4.** The trustee cites section 548 of the Bankruptcy Code, 11 U.S.C. § 548, rather than section 544(b) as the source of his cause of action. Although section 548 contains the Bankruptcy Code's "built in" fraudulent transfer law, it does not authorize the trustee

to rely on state law. In any event, section 548 would not reach the 38 Albany Street transaction because it applies only to transfers made within the year before the debtor filed for bankruptcy. See 11 U.S.C. § 548(a). The New York UFCA, by contrast, provides a statute of limitations of six years from the date of the contested transaction. See N.Y.C.P.L.R. §§ 213, 203(f) (McKinney 1990); Quadrozzi Concrete Corp. v. Mastroianni, 56 A.D.2d 353, 355–56, 392 N.Y.S.2d 687, 688–89 (2d Dep't 1977).

*e.g., Taylor–Outten v. Taylor,* 248 A.D.2d 934–35, 670 N.Y.S.2d 295, 296 (4th Dep't 1998). The intent of the parties to the transaction is irrelevant, unless the party suing to avoid the conveyance argues that the court should treat multiple business deals as a single transaction for purposes of analyzing whether "fair consideration" was provided. *HBE Leasing v. Frank IV,* 48 F.3d at 635.

■ A conveyance is "actually" fraudulent if it is made with "actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors." N.Y.Debt. & Cred.Law § 276. "Actual intent" must be proved by clear and convincing evidence. *See United States v. McCombs,* 30 F.3d ·310, 328 (2d Cir.1994). Even where this burden is satisfied, however, the New York UFCA protects the rights of certain "innocent" transferees who paid "fair consideration" for property without "knowledge of the fraud at the time of the purchase." N.Y.Debt. & Cred.Law § 278(1); *HBE Leasing v. Frank IV,* 48 F.3d at 636 (noting the statute's "policy of protecting innocent creditors or purchasers for value who have received the debtor's property without awareness of any fraudulent scheme").

### 3. The Two Conveyances at Issue

#### a. Conveyance of 38 Albany Street

The trustee's claim that Corcoran fraudulently transferred 38 Albany Street to Ms. Sullivan cannot be resolved as a matter of law. Factual questions exist as to (1) whether Ms. Sullivan provided "fair consideration" for 38 Albany Street, and (2) whether she had knowledge of any fraudulent intent by Corcoran at the time of the purchase. Both issues are relevant to her possible status as an innocent transferee of any actually fraudulent transfer by the debtor. The disputed question of fair consideration, if resolved in Ms. Sullivan's favor, would also preclude a finding of constructive fraud. For these reasons the order of summary judgment as to the 38 Albany Street transfer must be vacated.

#### (1) *Constructive Fraud*

■ To establish constructive fraud under § 273 of the Debtor and Creditor Law, the trustee is required to show that Corcoran (1) conveyed the property to Ms. Sullivan (2) without fair consideration, and (3) thereby rendered himself insolvent. *See United States v. McCombs,* 30 F.3d at 323.

■ Ms.· Sullivan concedes the first fact, but she vigorously asserts that she paid fair consideration for the house. It is the trustee's burden to prove that she did not do so. *See Glasser v. Kashinsky,* 237 A.D.2d 252, 655 N.Y.S.2d 400 (2d Dep't 1997); *American Inv. Bank v. Marine Midland Bank,* 191 A.D.2d 690, 691–92, 595 N.Y.S.2d 537, 538 (2d Dep't 1993).

Under New York law

■ Fair consideration is given for property . . .

a. When in exchange for such property . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property . . . is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property.

N.Y.Debt. & Cred.Law § 272. Recognizing that this formulation is less than precise, courts have ruled that "fair consideration" must be determined "upon the facts and circumstances of each particular case." *United States v. McCombs,* 30 F.3d at 326; *see also Glasser v. Kashinsky,* 237 A.D.2d at 252, 655 N.Y.S.2d at 400 (denying summary judgment and noting that "the determination of . . . what constitutes fair consideration is generally a question of fact"). Such fact specific inquiries are generally inappropriate for summary judgment.

In this case, the trustee has not produced any evidence that Sullivan pur-

160

chased the house for substantially less than its fair market value in July 1992. She indisputably parted with $75,000 in cash. The $75,000 mortgage she signed is valid. It was properly recorded a few weeks after the transaction, and Ms. Sullivan remains obligated to the holder. The trustee's evidence of the house's market value is limited to one real estate listing, dated nearly two years after the challenged transfer, advertising the house for $200,000. On this record, the trustee does not seriously contend, nor could he, that a $150,000 payment would not represent "fair consideration" as a matter of law.

Instead, the trustee advances a more subtle argument. He submits that Corcoran's 1994 transfers of the $61,824 check and the $26,000 in cash were intended to reimburse Ms. Sullivan for the $75,000 down payment made two years earlier. In sum, the trustee contends that the consideration provided by Ms. Sullivan for the house in 1992 was "illusory," because the parties knew all along that her money would be returned. *See HBE Leasing Corp. v. Frank,* 61 F.3d 1054, 1062 (2d Cir.1995) [hereinafter *"HBE Leasing v. Frank V"*]. The bankruptcy court apparently accepted this argument; the judge found that the $61,824 "support[ed] the fraudulent conveyance on the" 38 Albany Street property. (A.74).

 The trustee's position is based on the judicially crafted rule that under appropriate circumstances, multiple transactions may be "collapsed" and treated as phases of a "single, integrated transaction" under the UFCA. *E.g., Orr v. Kinderhill Corp.,* 991 F.2d 31, 35–36 (2d Cir.1993). To invoke the rule, however, the trustee must prove not only that the multiple transactions were linked, but also that Ms. Sullivan had "actual or constructive knowledge of the entire scheme that renders her exchange with the debtor fraudulent." *HBE Leasing v. Frank IV,* 48 F.3d at 635, 636 n. 9. This knowledge requirement reflects the New York UFCA's policy of protecting innocent purchasers for value.

*See id.* at 636 (citing N.Y.Debt. & Cred. Law § 278(1)).

Before analyzing whether Ms. Sullivan had knowledge "of the entire scheme," the court must consider whether such a scheme has been established as a matter of law. Certainly, the trustee produced no direct evidence of any arrangement to reimburse Sullivan for her $75,000 down payment on the house. In contrast, Ms. Sullivan has produced documentary evidence that raises factual questions on this issue. For example, an opinion by the Court of Appeals of the State of Michigan, where the Leona A. Corcoran trust was probated, shows that a constructive trust was not created in favor of Corcoran until February 23, 1994. *See Corcoran v. Corcoran,* No. 88–147291–TR (Mich.Ct.App. Feb. 23, 1994). Indeed, the trustee agrees that it was not until 1994 that the trust began to recover the looted assets. That suggests that at the time of the closing on 38 Albany Street, no one knew whether the trust would ever be able to reimburse Corcoran for the $61,824 that he had advanced.

 Ms. Sullivan supplements the documentary record with a flat denial that there was any scheme to reimburse her. This court cannot, of course, evaluate the credibility of this denial. Nevertheless, its existence creates a triable issue of fact that prevents a court from finding as a matter of law that she had "actual" knowledge of the fraudulent scheme alleged by the trustee. *See R.B. Ventures Ltd. v. Shane,* 112 F.3d 54, 58 (2d Cir.1997) (noting that on a motion for summary judgment, a court is generally authorized only to inquire "into the 'implausibility' of inferences from circumstantial evidence, not [to inquire] into the credibility of direct evidence"). The "constructive" knowledge standard is no more helpful to the trustee. "Constructive knowledge of fraudulent schemes will be attributed to transferees who were aware of the circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry."

*HBE Leasing v. Frank IV,* 48 F.3d at 636. Since defendant has raised a colorable question about whether a scheme to reimburse her ever existed, constructive knowledge cannot be found as a matter of law.

In sum, because reasonable minds could differ on the question of whether the Ms. Sullivan provided fair consideration for the house she purchased in 1992, the trustee cannot use a constructive fraud theory to secure summary judgment on his claim that Corcoran fraudulently conveyed the 38 Albany Street property.

### (2) Actual Fraud

■ To secure summary judgment on a theory of "actual fraud" in the transfer of 38 Albany Street, the trustee was obligated to show as a matter of law that (1) Corcoran transferred the property with "actual intent to hinder, delay or defraud his creditors," N.Y.Debt. & Cred.Law § 276; and (2) Ms. Sullivan had "knowledge of the fraud at the time of the purchase," N.Y.Debt. & Cred.Law § 278(1); *see also HBE Leasing v. Frank IV,* 48 F.3d at 639; *FDIC v. Malin,* 802 F.2d 12, 18 (2d Cir.1986).

■ "Because direct proof of a debtor's intent to hinder his creditors is rare, creditors may rely on 'badges of fraud' to establish an inference of fraudulent intent." *Shelly v. Doe,* 249 A.D.2d 756, 758, 671 N.Y.S.2d 803, 806 (3d Dep't 1998); *see also United States v. McCombs,* 30 F.3d at 328. These include "(1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance." *Id.; see also United States v. McCombs,* 30 F.3d at 328. The bankruptcy court accurately observed that at least two of those factors

are present in the 38 Albany Street transfer: the close relationship between the parties, and Corcoran's retention of the property for approximately a year after the sale. In fact, Corcoran was listed as the owner in a May 1994 real estate listing.[5]

The trustee also points to the suspicious timing of the transaction: it closed only one month after the DEC fined Corcoran almost $400,000. At that point, Corcoran had a motive to remove assets from the reach of his creditors. Converting his house into readily disposable cash and a mortgage note was one way to achieve that goal.

■ While these facts are strongly indicative of Corcoran's fraudulent intent, the trustee was further obliged to establish the second element of an actual fraud as a matter of law, i.e., that Ms. Sullivan had "knowledge of the fraud at the time of the purchase." N.Y.Debt. & Cred.Law § 278(1); *see also FDIC v. Malin,* 802 F.2d at 19 ("It is important to note that under § 278, the focus is on the good faith of the transferee as opposed to the transferor."). The issue of Ms. Sullivan's "knowledge" in this context is somewhat broader than it was when the trustee pressed the court to "collapse" the financial transactions between Ms. Sullivan and Corcoran to find constructive fraud. At this juncture, the question is whether Ms. Sullivan knew or should have known that Corcoran's intent in selling the house was to hinder his creditors *in any way.* In sum, the matter is not confined to whether she knew or should have known of a scheme through which she would be reimbursed for the purchase. *Compare HBE Leasing v. Frank IV,* 48 F.3d at 636–37 (analyzing whether to collapse multiple transactions) *with id.* at 639 (stating the standard for evaluating the transferee's knowledge concerning a single transaction); *see also United States v. Orozco-*

---

5. The court also found that the consideration provided by Sullivan was inadequate, but as

noted above that finding required the resolution of contested factual issues.

*Prada,* 636 F.Supp. 1537, 1542–43 (S.D.N.Y.1986).

■ Viewed in the light most favorable to Ms. Sullivan, the evidence does not support a single conclusion as a matter of law that she was "aware of circumstances that should have led [her] to inquire further" into any illicit motive on Corcoran's part. *HBE Leasing v. Frank IV,* 48 F.3d at 636, 639. Ms. Sullivan has sworn that at the time the sale closed, she was unaware of Corcoran's financial difficulties. She submits that she learned about his debts later, in approximately March 1994. Once again, the court may not substitute its assessment of Ms. Sullivan's credibility for that of a fact finder. Although vigorous cross examination will undoubtedly probe deeper into the somewhat curious financial arrangements between Ms. Sullivan and Mr. Corcoran over the years, the 38 Albany Street transfer cannot be ruled actually fraudulent as a matter of law when as the bankruptcy court observed, "Mrs. Sullivan's version of the [real estate] transaction is somewhat plausible."

In sum, the record reveals "genuine issue[s] of material fact" with regard to the claim that there was an actually or constructively fraudulent conveyance of 38 Albany Street. *Samuels v. Mockry,* 77 F.3d at 36. The bankruptcy court's reasonable interpretation of the evidence required it to choose between competing evidence regarding fair consideration, and Sullivan's knowledge of any fraudulent intent on Corcoran's part. Such choices are reserved to a fact finder. The summary judgment award on this claim must be vacated.

### b. The Transfer of the $61,824

The bankruptcy court correctly found no genuine issue of fact regarding the constructively fraudulent transfer of $61,824 from the debtor to Ms. Sullivan. Sum-mary judgment was appropriately entered on this part of the trustee's claim.[6]

■ To set aside the § 61,824 conveyance as a constructive fraud under § 273 of the Debtor and Creditor Law, the trustee was required to show that Corcoran (1) conveyed the money to defendant, (2) without fair consideration, and (3) thereby rendered himself insolvent. *See United States v. McCombs,* 30 F.3d at 323. Ms. Sullivan concedes that it was Corcoran who conveyed the money to her and that the attorney's role in the transaction was a sham. Thus, the first element was established.

Ms. Sullivan attempts to create a factual issue with respect to the "fair consideration" element by asserting that one-and-a-half years after the $61,824 transfer, she provided Corcoran with the use of her house and various cars. Specifically, she claims that for the period between September 1995 and September 1997, while Corcoran was living with her in South Carolina, he owed her $1,200 per month for rent, food, and other living expenses. Corcoran actually paid only $450–500 per month, resulting in a total deficiency over the years of approximately $17,000. Ms. Sullivan further asserts that between 1995 and 1998, Corcoran defaulted on agreements to pay for the use of several cars that she owned. Specifically, she claims that she bought Corcoran a 1995 GMC Suburban in September 1995, and that Corcoran "agreed that he would pay me a rental of $350 per month." After Corcoran destroyed this vehicle in January 1998, Ms. Sullivan bought him another car and rented it to him. In addition, she claims to have purchased him yet another car for $17,963 in May 1996. The total value of defendant's claimed "consideration" is $51,963.

Although Ms. Sullivan's assertions must be accepted as true in the summary judgment context, they do not create a factual

---

**6.** The transfer may also have been fraudulent in the actual sense, *see* N.Y.Debt. & Cred.Law § 276, but the trustee's proof of constructive fraud is sufficient to permit him to recapture the money.

dispute about whether she provided fair consideration for the $61,824 transfer. Ms. Sullivan's position is that (1) she *charged* Corcoran for use of her home and cars, and (2) he did not pay her what he owed. In this regard, she is in the same position as any other unpaid creditor of a bankrupt debtor and can present her claims to the trustee for a pro rata payout when the estate is liquidated. *See* 11 U.S.C. § 726. Significantly, Ms. Sullivan does not assert that she ever provided anything of value to induce Corcoran to transfer the $61,824. Indeed, at her deposition, she provided a more plausible reason for the transfer: "I guess [Corcoran's] mother knew that he couldn't have it, so she gave it to me."

Even if Ms. Sullivan had alleged that she induced the transfer of the $61,824 with promises to allow Corcoran to use her house and cars at some later date, such "promises of future support ... are insufficient as a matter of law to be considered a fair equivalent of the property transferred." *Schmitt v. Morgan*, 98 A.D.2d 934, 935, 471 N.Y.S.2d 365, 366 (3d Dep't 1983); *accord HBE Leasing v. Frank V*, 61 F.3d at 1061. Indeed, the Second Circuit has also emphasized the temporal component of "fair consideration" under the New York UFCA: "property [must] be exchanged for fair consideration *which is present.*" *HBE Leasing v. Frank V*, 61 F.3d at 1061 (emphasis added) (holding that an attorney's promise to render "extensive legal services, over an extended period of time and in several courts" did not satisfy the requirement of a present exchange where the legal work was "of considerably uncertain scope and duration"); *see also* N.Y.Debt. & Cred.Law § 272(b) ("Fair consideration is given for property ... when such property ... is received in good faith to secure a present advance ..."). There being no evidence that could support a factual finding that Ms. Sullivan provided fair present consideration for the debtor's transfer of $61,824 to her, the bankruptcy court correctly found that the second element of a con-

structive fraud was established as a matter of law.

The final element of constructive fraud required proof that Corcoran was insolvent immediately after the challenged conveyance. Under New York law, "a person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y.Debt. & Cred.Law § 271(1). Once it is established that a debtor transferred property without fair consideration, however, the law presumes that the transfer rendered him insolvent. *See United States v. Orozco–Prada*, 636 F.Supp. 1537, 1541 (S.D.N.Y.1986), *aff'd without opinion*, 847 F.2d 836 (2d Cir.1988) (citing *Feist v. Druckerman*, 70 F.2d 333, 335 (2d Cir. 1934)). The burden then shifts to the transferee to overcome that presumption by demonstrating the debtor's continued solvency after the transfer. *See United States v. Red Stripe, Inc.*, 792 F.Supp. 1338, 1342 (E.D.N.Y.1992); *United States v. Orozco–Prada*, 636 F.Supp. at 1541; *Miner v. Edwards*, 221 A.D.2d 934, 935, 634 N.Y.S.2d 306, 307–08 (4th Dep't 1995); *Hickland v. Hickland* 100 A.D.2d 643, 645, 472 N.Y.S.2d 951, 954 (3d Dep't 1984). Not surprisingly, Ms. Sullivan has not even attempted to make this showing. It is undisputed that by May 1994, when Corcoran transferred $61,824 to Ms. Sullivan, he owed environmental regulators $500,000. Within weeks of the challenged transfer, he sought protection from his creditors under the bankruptcy laws.

Even if Ms. Sullivan could establish a factual issue with respect to Corcoran's solvency, the trustee would still be entitled to summary judgment on a related "constructive fraud" provision codified in the New York UCFA. Under § 273–a, a party seeking to void a conveyance unsupported by fair consideration need not establish insolvency if the conveyor (1) was, at the time of the transfer, "a defendant in an

action for money damages" or "a judgment in such an action has been docketed against him," and (2) has "fail[ed] to satisfy the judgment." *Taylor–Outten v. Taylor,* 248 A.D.2d 934–35, 670 N.Y.S.2d 295, 296 (4th Dep't 1998); *accord HBE Leasing Corp. v. Frank V,* 61 F.3d at 1057. At the time of the challenged transfer, the Town of Brookhaven had secured a money judgment against Corcoran and the DEC was seeking the same relief in state court. It is uncontested that Corcoran has failed to satisfy either judgment. In sum, the final element of a constructively fraudulent conveyance was established as a matter of law.

Corcoran's decision to transfer $61,824 to Ms. Sullivan for no present consideration has proved enormously injurious to his creditors' ability to recover what they are owed. It is precisely this type of transaction that fraudulent conveyance law forbids. Where no evidence is adduced to permit any other conclusion than that there has been a fraudulent conveyance, summary judgment is appropriately entered for the trustee.

### Conclusion

The order of the bankruptcy court granting summary judgment to the trustee with respect to the fraudulent conveyance of $61,824 from John D. Corcoran to Mary J. Sullivan in 1994 is affirmed. Because factual questions must be resolved as to Corcoran's transfer of the 38 Albany Street property to Ms. Sullivan, the court's award of summary judgment on that part of the trustee's claim must be vacated and the case remanded. If the parties cannot resolve this dispute between themselves after further consultation with the bankruptcy judge, and if a trial is necessary before this court, the bankruptcy judge is asked to advise the court on or before April 15, 2000. The clerk of this court is to mark this appeal closed.

*SO ORDERED.*