Howard **MILLS**, Superintendent of Insurance of the State of New York, in his capacity as Rehabilitator of Frontier Insurance Company, Plaintiff,

v.

**EVEREST REINSURANCE COMPANY and Benfield Inc., f/k/a E.W. Blanch Co., Defendants.**

No. 7:05–cv–8928 (WWE).

United States District Court, S.D. New York.

March 6, 2009.

448

Henry Neal Conolly, Rock Hill, NY, Seema Anita Misra, Stroock & Stroock & Lavan LLP, New York, NY, for Plaintiff.

Bryan Christopher Keane, Timothy Earle Branson, Dorsey & Whitney, LLP, Minneapolis, MN, Deirdre Joan Sheridan, Patrick J. Feeley, Dorsey & Whitney LLP, New York, NY, for Defendants.

## MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT

WARREN W. EGINTON, Senior District Judge.

This action arises from Frontier Insurance Company's attempts to secure reinsurance on its casualty and property insurance products. In 1999, plaintiff entered into an Underlying Professional Liability Excess of Loss Reinsurance Contract ("UPL Contract") with defendant Everest Reinsurance Company as the reinsurance provider and Benfield Inc. as the broker/agent. Plaintiff asserts claims against each defendant for fraudulent conveyance related to the UPL Contract. Now pending before the Court are defendant Benfield's motion for summary judgment (Doc. # 126) and defendant Everest's motion for summary judgment (Doc. # 131).

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332.

### BACKGROUND

The parties have submitted briefs, a stipulation of facts and supporting exhibits, which reflect the following factual background.

Plaintiff Howard Mills is the former Superintendent of Insurance of the State of New York.[1] He is the Rehabilitator of Frontier Insurance Company ("Frontier") and a citizen of New York. Frontier is a New York-domiciled insurance company with its principal place of business in New

---

1. Eric Dinallo was nominated by Governor Eliot Spitzer and confirmed by the New York State Senate to be Superintendent of Insurance on April 18, 2007.

York. Defendant Everest Reinsurance Company ("Everest") is a Delaware corporation with a principal place of business in New Jersey. Benfield, Inc., formerly known as E.W. Blanch Co., is a Delaware corporation with a principal place of business in New Jersey.

Plaintiff contacted Benfield, a reinsurance broker or intermediary, in December 1998 or January 1999 to aid it in finding reinsurance for its individual medical malpractice insurance losses between $250,000 and $1,000,000. Such coverage would enable Frontier to retain its A—rating with A.M. Best, an insurance rating firm. This rating was of "great importance" to Frontier.

In January 1999, Benfield sent a detailed submission of underwriting information regarding Frontier's requested coverage to approximately twenty reinsurers to solicit quotes on behalf of Frontier. The submission contained a list of objectives to be included in any reinsurance agreement. Seven reinsurers, including defendant Everest, responded with reinsurance proposals. Frontier decided to proceed with Everest's proposal. Frontier and Everest conducted considerable negotiations through Benfield. On February 3, 1999, Benfield sent Frontier a term sheet summarizing the final terms negotiated with Everest. Plaintiff alleges that the terms of the agreement changed materially after March 26. On March 25, Benfield confirmed written terms and conditions with Everest and Frontier; Everest proceeded to sign this confirmation. Everest contends, however, that this confirmation did not constitute the final terms and conditions of the reinsurance policy.

In the course of negotiations, the Vice President of Frontier, Jerry Hartwick, raised concerns about whether the UPL Contract sufficiently transferred risk to meet the terms of Financial Accounting Standard ("FAS") 113. Frontier alleges that it relied on Benfield to determine whether the UPL Contract met the FAS standard. Benfield, to the contrary, argues that whether there is sufficient risk transfer is an accounting question for plaintiff's accountant, not for a broker like Benfield.

More changes were then made to the proposed UPL Contract which met the approval of Frontier's accounting firm, Ernst & Young. In a message dated February 3, 1999, Benfield wrote to Frontier regarding the UPL Contract:

> As the reinsurer has unlimited liability, there should be little question that this contract complies with the FAS 113 risk transfer requirements. As always, we recommend discussing risk transfer with your outside auditor.

Frontier stated that Ernst & Young had confirmed that the proposed agreement satisfied FAS 113 and that had Ernst & Young not agreed with such conclusion, Frontier would not have entered into the agreement. Further, Everest's accounting department likewise found that the UPL Contract adequately transferred risk under FAS 113.

Benfield prepared the UPL Contract with Everest. It was signed by Frontier on May 27, 1999 and by Everest on September 23, 1999. The UPL Contract provided that Benfield's compensation for its role as agent and broker was to be twenty percent of the reinsurer's margin received by Everest.

In March 2001, Frontier voluntarily agreed to cease underwriting new business. On August 24, 2001, the Superintendent of Insurance of the State of New York initiated a proceeding pursuant to Article 74 of the New York Insurance Law, seeking an order placing Frontier into rehabilitation. On August 27, the

New York State Supreme Court appointed the Superintendent as the temporary receiver of Frontier, and on October 15, the court entered an order appointing the Superintendent as Rehabilitator of Frontier. The October 15 order found that Frontier was insolvent. Plaintiff contends that it was insolvent from March 1999 and has remained insolvent since that date.

From 1999 through 2005, Frontier has taken credit for the UPL Contract as reinsurance on its financial statements. Frontier states that it has not changed the classification of the UPL Contract on its financial statements so as to keep its statements comparable from year-to-year.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *Am. Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505.

Plaintiff's original complaint alleged claims for mutual mistake, equitable avoidance, fraudulent conveyance and fraud. The Court, by order dated January 23, 2006 (Doc. #27), dismissed plaintiff's causes of action based on mutual mistake, equitable avoidance and fraud, leaving only plaintiff's claims of fraudulent conveyance under sections 273, 274 and 275 of the New York Debtor & Creditor Law ("DCL") against each defendant.[2] Each defendant has moved for summary judgment on these remaining counts of fraudulent conveyance.

Mills acts on behalf of Frontier pursuant to New York Insurance Law § 7425(c), which provides, in pertinent part, that:

> The superintendent, as ... rehabilitator ... may avoid any transfer of, or lien upon, the property of an insurer which any creditor, shareholder or member of such insurer might have avoided and may recover the property transferred or its value from the transferee unless he was a bona fide holder for value prior to the date of the granting of an order to show cause under this article. Such property or its value may be recovered from anyone who has received it except a bona fide holder for value.

Plaintiff seeks to avoid payments made under the UPL Contract pursuant to sec-

---

**2.** This decision was reported at *Mills v. Everest Reinsurance Co.,* 410 F.Supp.2d 243, 252 (S.D.N.Y.2006).

tions 273, 274 and 275 of the DCL. Section 273 provides that:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

Section 274 states that:

Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

Finally, section 275 provides that:

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

New York law defines "fair consideration" as:

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 272.

The New York Insurance Law therefore authorizes the Rehabilitator to avoid trans- fers except those made to a bona fide holder in due course while the DCL allows the Rehabilitator to recover transfers not made for fair consideration. The Court reads these provisions as being mutually exclusive causes of action. That is, a reha- bilitator has the authority under section 7425(c) of the Insurance Law to avoid cer- tain transfers and recover certain property except from a bona fide holder for value. At the same time, under the DCL, any plaintiff may recover fraudulent convey- ances except those with fair consideration. As the parties have not presented any persuasive arguments that these are not distinct causes of action, the Court finds that plaintiff can recover any fraudulent conveyances except those made for fair consideration under the DCL because those are the provisions under which the Rehabilitator has moved.

 In an action to recover a fraudu- lent conveyance, the plaintiff bears the burden of demonstrating both insolvency and a lack of fair consideration. *United States v. McCombs,* 30 F.3d 310, 324 (2d Cir.1994). Payment on account of an ante- cedent debt constitutes fair consideration under New York law. *See HBE Leasing Corp. v. Frank,* 48 F.3d 623, 633 (2d Cir. 1995).

## I. Benfield

Benfield argues that it is entitled to summary judgment because (1) it provided fair consideration to Frontier; (2) Frontier received value from Benfield; and (3) Ben- field acted in good faith. Alternatively, Benfield claims that Frontier's payments are on account of an antecedent debt and that Frontier cannot recover because it has already recovered from Frontier Pacif- ic and Western Indemnity, two of Fron- tier's subsidiaries.

█ Benfield does not raise an issue as to whether Frontier was left insolvent under the DCL. Therefore, the only argument before the Court is whether Benfield provided fair consideration to Frontier. Benfield argues that it did. Frontier counters that Benfield's role was not performed because the UPL Contract was not a reinsurance contract pursuant to FAS 113. Therefore, any payments for the work performed by Benfield in brokering the UPL Contract constituted a fraudulent conveyance because Frontier did not receive the bargained-for consideration—a reinsurance arrangement.

In support of its argument, Benfield relies on *RGH Liquidating Trust v. Deloitte & Touche LLP*, 13 Misc.3d 1219(A), 2006 WL 2872525 (N.Y.Sup.Ct.2006), *aff'd*, 47 A.D.3d 516, 851 N.Y.S.2d 31 (1st Dep't), *cert. denied*, 11 N.Y.3d 804, 868 N.Y.S.2d 584, 897 N.E.2d 1065 (2008), in which the New York Supreme Court ruled that there could be no claim of fraudulent conveyance against an auditor who had performed an audit, no matter how poorly its work was performed. The Court does not find *RGH* dispositive of the issue. As plaintiff points out, an auditor is engaged to perform work that is charged based on some time-unit—for example, per hour—while a reinsurance policy broker is hired to procure a reinsurance contract.

The Court has previously ruled that plaintiff may not challenge the existence of the UPL Contract and may not seek its rescission. Plaintiff's next best hope must be to demonstrate that Benfield did not succeed in performing its task and is not entitled to its fees. Whether Benfield did so is a question best left for the factfinder. At this point, the Court cannot conclude that plaintiff received fair consideration for its payments or that its payments were owed on an antecedent debt. *See Sullivan v. Messer (In re Corcoran)*, 246 B.R. 152, 159 (E.D.N.Y.2000) (observing that it is "generally inappropriate" to determine whether fair consideration was provided on summary judgment). Whether Frontier's payments to Benfield were made in fair consideration or on account of an antecedent debt to a broker that, arguably, did not perform its duties cannot be decided by the Court at this juncture.

Benfield argues that by acting as an intermediary for soliciting quotes and then for negotiating the UPL Contract, it provided services which were a fair equivalent to the amounts due from plaintiff. Again, this is an issue for the jury, not for the Court on summary judgment. In addition, Benfield's contention that it acted in good faith is irrelevant to claims under DCL §§ 273, 274 and 275. *See United States v. McCombs*, 30 F.3d 310, 326 n. 1 (2d Cir. 1994) (observing that good faith is not an element of a claim under DCL § 273). Accordingly, the Court will deny summary judgment as to Benfield.

The Court is concerned with the presence of plaintiff's auditors in this story. Ernst & Young signed off on the UPL Contract even though it was not the proper reinsurance contract that Frontier required. Neither party, however, has presented any precedent to the Court, and the Court could not find any, where the presence of an auditor for plaintiff affected a defendant's liability in a fraudulent conveyance action.

## II. Everest

Everest argues that it is entitled to summary judgment because, among other reasons, any payments by Frontier were on account of an antecedent debt incurred through the UPL Contract. Frontier responds that because the UPL Contract was not a proper reinsurance contract, it cannot create an antecedent debt for which repayment would qualify as fair consider-

ation under the law. Because the Court finds that Everest's payments were on account of an antecedent debt and did constitute fair consideration, it will grant Everest's motion for summary judgment.

The Court has previously ruled that the Rehabilitator cannot challenge the validity of the UPL Contract because the statute of limitations to do so has run. *See Mills,* 410 F.Supp.2d at 252. It follows then that any liabilities or obligations stemming from the UPL Contract are owed and must be paid by Frontier. It does not matter that Frontier did not enter into the contract that it thought it had. *See American Surety Co. v. Patriotic Assurance Co.,* 242 N.Y. 54, 61, 150 N.E. 599 (1926) (holding that it was error to admit extrinsic evidence to contradict unambiguous provisions in insurance binder). Frontier may have desired a specific type of contract that it did not receive. Having agreed to it, however, Frontier and the Rehabilitator are bound by the agreement's terms. Representations that it intended otherwise cannot enable Frontier to escape its obligations.

Therefore, Frontier's expectations when it entered into the UPL Contract are immaterial as compared with the actual language of the agreement. Plaintiff's citation to *Silverman v. Paul's Landmark, Inc. (In re Nirvana Rest.),* 337 B.R. 495, 502–04 (Bankr.S.D.N.Y.2006) is misplaced to the extent that plaintiff believes that the expectations of the parties to a contract govern whether fair consideration was received. The Bankruptcy Court examined such intent because the lease agreement was "contingent and open-ended." There is no such argument here that the UPL Contract is not specific as to the parties' obligations. Therefore, *Nirvana Rest.* is inapplicable to the case at hand.

■ With its obligations established by the UPL Contract, the Court must next consider whether the payments to Everest constituted fair consideration. DCL § 272(b) provides that payment on an antecedent debt constitutes fair consideration provided that the debt is not "disproportionately small" compared to the payments. Plaintiff has not proffered any evidence that the debt to Everest was disproportionately small relative to the payments made under the UPL Contract. *See Joslin v. Lopez,* 309 A.D.2d 837, 838, 765 N.Y.S.2d 895 (2d Dep't 2003) (noting that burden of establishing lack of fair consideration is on party challenging conveyance).

Moreover, the Court does not accept Frontier's argument that the consideration for which it contracted is not fair. First, Frontier cannot argue that consideration was not provided because that argument is foreclosed by the expiration of the statute of limitations. Second, both Frontier and Everest share no insiders, officers or executives and are both sophisticated business operations that engaged in arms-length negotiations. Frontier agreed to an insurance contract with terms apparent on the agreement's face. Although the agreement did not provide what Frontier thought it did, to allow the Rehabilitator to recover payments made under the UPL Contract because Frontier did not receive what it expected to receive would change the nature of contract law. Here, there is no dispute that there was performance by Everest of the contractual terms actually agreed upon, even if they did not meet Frontier's expectations prior to the entering into the agreement. *See Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),* 403 F.3d 43, 54 (2d Cir.2005) (noting only one case in which a payment on an antecedent debtor made to an outsider was found lacking in fair consideration; debtor had swore that the payment was made to evade creditors); *Ede v.*

*Ede,* 193 A.D.2d 940, 941, 598 N.Y.S.2d 90 (3d Dep't 1993).

The Court is unpersuaded by Frontier's proffered hypothetical concerning a creditor challenging a home-purchaser's paying a grossly extravagant price for a home. According to Frontier, if the Court were to grant summary judgment in favor of Everest, it would mean that the creditor could not challenge the excessive mortgage. As Everest correctly observes, a creditor could challenge the mortgage by asserting claims regarding the purchase itself, a path unavailable here. Plaintiff simply provides no case law to support its argument that a rehabilitator can recover a fraudulent conveyance based on a valid contract.

Although, as noted above, questions of fair consideration are generally for the factfinder, there is no evidence presented here upon which a reasonable jury could conclude that the debt was disproportionately small. As such, the Court need not consider if and when Frontier became insolvent. The Court will grant Everest's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendant Benfield's motion for summary judgment (Doc. # 126) and GRANTS defendant Everest's motion for summary judgment (Doc. # 131).